## United States District Court
## Middle District of Florida
## Jacksonville Division

Ladorn Singer,

        Plaintiff(s),

     vs.

Andrew Gambel, individually,
Chonderia Garrison, individually,
Joshua Tucker, individually, Willie J.
Williams, III, individually, Kori
Reed, individually,

        Defendant(s).

Case No.:3:19-cv-00729

## Complaint

Plaintiff, Ladorn Singer, brings this civil action against, Andrew Gambel, individually, Chonderia Garrison, individually, Joshua Tucker, individually, Willie Williams, individually, Kori Reed, individually, and alleges that Defendants violated Plaintiff's 8th Amendment rights and injured Plaintiff as follows:

## 1.  Common Allegations of Fact

### 1.1.   Introduction, Jurisdiction, Venue, and Parties

### Introduction

1.    Plaintiff, Ladorn Singer, brings this suit for deliberate indifference to his Eighth Amendment rights against these four



defendant correctional officers who subjected Mr. Singer to a life-threatening beating due to their actions.

## Jurisdiction and Venue

2.   This is an action for damages and attorney's fees under 42 U.S.C. § 1983 and 1988.

3.   This action alleges violations of the United States Constitution, including violations of the Eighth and Fourteenth Amendments.

4.   This action also alleges violations of state law.

5.   This Court has original jurisdiction over this action and the parties under 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and 28 U.S.C. §§ 1331, et. seq.

6.   Venue is proper under 28 U.S.C. § 1391.

7.   The acts, omissions, and practices described below occurred within the jurisdiction of the United States District Court in and for the Middle District of Florida.

8.   Plaintiff seeks an award of compensatory damages, costs, expenses, and reasonable attorney's fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Plaintiff seeks an award of punitive damages against Defendants for their reckless and callous indifference to Plaintiff's clearly established rights.



9.    The acts, omissions, practices, and conduct of Defendants were committed under color of state or local law.

10.    The acts and omissions of the individual Defendants were committed within the course and scope of their employment as a correctional officer for the Florida Department of Corrections.

11.    Plaintiff has complied with all conditions precedent necessary to bring this action.

## Parties

12.    Plaintiff, Ladorn Singer, ("Plaintiff") is a resident of Pensacola and a citizen of the State of Florida.

13.    Plaintiff, Ladorn Singer, was incarcerated at the time of the incident alleged in this Complaint but is no longer incarcerated.

14.    Defendant, Willie J. Williams, III, ("Williams") was a correctional officer for the Florida Department of Corrections holding Temporary Employment Authorization and is a "person" subject to suit under 42 U.S.C. § 1983.

15.    Defendant Williams is being sued in his individual capacity.

16.    Defendant, Kori Reed, ("Reed") was a correctional officer sergeant for the Florida Department of Corrections and is a "person" subject to suit under 42 U.S.C. § 1983.

17.    Defendant Reed is being sued in her individual capacity.



18.   Defendant, Chonderia Garrison, ("Garrison") was a correctional officer for the Florida Department of Corrections holding Temporary Employment Authorization and is a "person" subject to suit under 42 U.S.C. § 1983.

19.   Defendant Garrison is being sued in her individual capacity.

20.   Defendant, Joshua Tucker, ("Tucker") was a correctional officer sergeant for the Florida Department of Corrections and is a "person" subject to suit under 42 U.S.C. § 1983.

21.   Defendant Tucker is being sued in his individual capacity.

22.   Defendant, Andrew Gambel, ("Gambel") was a correctional officer sergeant for the Florida Department of Corrections and is a "person" subject to suit under 42 U.S.C. § 1983.

23.   Defendant Gambel is being sued in his individual capacity.

## 1.2.   Background Facts

24.   On July 4, 2015, Plaintiff, Ladorn Singer, was housed at Reception and Medical Center Main-Unit, E1 dorm, and sustained a life-threatening head injury when he was attacked by inmates following the disclosure of Mr. Singer's name by a correctional officer to those inmates.

25.   Defendant Gambel, a Department of Corrections Sergeant, had received a complaint about an inmate complaining to others about DOC correctional Officers. He inquired with a Correctional



Officer named Winters to find out information about who the prisoners were, and Winters informed Defendant Gambel of the name Ladorn Singer.

26.   On July 4, 2015, around 12:15 a.m. a Department of Corrections Sergeant, Defendant Andrew S. Gambel, and Defendants Garrison, Reed, Tucker, and Williams went to E1 dormitory where Ladorn Singer was housed along with many others in an open dorm. Gambel with the support of the other correctional officers began to dress down all of the inmates in the dorm. Gambel advised the inmates that a complaint against DOC personnel had come from the E1 dorm and he advised the inmates that they "needed to learn how to take care of their own house," i.e., take care of the person responsible for making the complaint against the DOC personnel.

27.   Gambel was extremely agitated about the complaint made against DOC personnel and threatened to tear everyone's lockers apart, wreck the dorm, "tear their shit up," and make the inmates lives hell for having made this complaint against DOC staff.

28.   Defendant Gambel said to the inmates that correctional staff would be involved in "hurricaning some shit" if the inmates did not "Police their own house."



29.   Gambel stated "you sons of bitches you keep calling your family and having your families calling in, I'll tell you what we are going to do. I'll spend the next hour in here tearing everyone's shit up if this shit doesn't stop." Gambel went on and stated further that "we will keep doing this all night long and I will trash everybody's shit if it's not handled inside here."

30.   Some inmates spoke up and asked the sergeant who the inmate was that made the complaint, presumably to take care of the inmate themselves in accordance with the "take care of their own house" statement made by the sergeant. Finally, the sergeant stated "Do we understand each other? People slip and fall all the time."

31.   The inmates stated "Put him out there Sarge: who is it?"

32.   The inmates stated "Let us know who it is…we will take care of this."

33.   Gambel asked if they would take care of it and the inmates assured the sergeant they would handle the matter.

34.   At that time, Defendant Reed signaled the correctional staff would not see anything by holding her hands over her eyes.

35.   The correctional officers then left.

36.   A short time later, Defendant Gambel returned with the other Defendants and informed the dorm that he had a printout of the person's phone call. Johnny Haugabook, went up to the sergeant



in the correctional officers' office adjacent to the dorm and Gambel told Haugabook to handle their own and suggested to Haugabook that "People fall every now and then."

37.  Johnny Haugabook received a white piece of paper from Gambel with Ladorn Singer's name on it and his bed number.

38.  Johnny Haugabook gathered a few other individuals together, went to Ladorn Singer's bunk, and proceeded to beat him and stomp on his head.

39.  After nearly beating him to death, they picked Singer up off the floor and carried him back to his bed.

40.  One of the inmates who beat him told Plaintiff that Gambel and Williams instructed them that he could not ask for medical help, and he could not check in with the Correctional Officers for any reason following the beating.

41.  Two correctional officers, including Defendant Williams, came in following the beating during security checks. These officers had Plaintiff's clothes and bloody sheets placed into red biohazard bags. Defendant Williams told inmate Campbell to clean up Plaintiff and provided Campbell a red bag and told him to put Singer's bloody belongings in it.

42.  The officers, including Defendant Williams, did not attempt to get the severely beaten Mr. Singer any medical assistance.



43.   Campbell complied with Williams' orders and placed Singer's belongings in the red bag and took Singer to the shower to clean him up.

44.   The inmates who beat Plaintiff almost to death were Johnny Haugabook, Willie Mathis, Jeremy Brogdon, and Robert Hallock. The beating was so fierce that one inmate stated it looked like "a piranha feeding."

45.   Following the attack Defendant Tucker forced Plaintiff to make a false statement about falling down rather than being attacked and made him sign it prior to allowing Plaintiff to receive medical attention for his injuries.

46.   Following the beating it was apparent to any observer that Mr. Singer had very severe injuries to his face and head and he was bleeding severely.

47.   Plaintiff has retained the services of the undersigned attorney and has become obligated to pay a reasonable attorney fee and costs for services rendered in pursuing the claims.



## 2. Claims

## 2.1.  Individual Capacity Claims under 42 U.S.C. § 1983

### Count 1 – Violation of 42 U.S.C. § 1983
### – 8th Amendment –
### Deliberate Indifference by
### Defendant Gambel

48.   Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

49.   At the time of the events, Plaintiff was a prisoner at Reception and Medical Center Lake Butler ("RMC"), and in the custody of the Florida Department of Corrections.

50.   While Plaintiff was a prisoner at RMC, Plaintiff was under the care of Defendant.

51.   Defendant was acting under color of state or local law.

52.   Defendant was aware that by making the statements he made to the dorm of prisoners and sharing Ladorn Singer's name with inmates and suggesting that people sometimes slip and fall, that there was a substantial risk of serious harm to Mr. Singer.

53.   Defendant's comments and the prisoners' responses in the dorm made Defendant aware of the likelihood of serious physical harm to any inmate who was identified by correctional officers as the snitch.



54. Despite Defendant's knowledge of that risk of serious harm, he made angry, inflammatory statements to the dorm, insinuated violence was the appropriate response, and share Ladorn Singer's name with inmates in the dorm.

55. Defendant's actions establish deliberate indifference to the 8th Amendment rights of Plaintiff.

56. By Defendant's actions, Plaintiff was deprived of the clearly established right to be free from deliberate indifference, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution.

57. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.



## Count 2 – Violation of 42 U.S.C. § 1983
### – 8th Amendment –
### Deliberate Indifference (Failure to Intervene) by
### Defendant Garrison

58. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

59. At the time of the events, Plaintiff was a prisoner at Reception and Medical Center Lake Butler ("RMC"), and in the custody of the Florida Department of Corrections.

60. While Plaintiff was a prisoner at RMC, Plaintiff was under the care of Defendant.

61. Defendant was acting under color of state or local law.

62. Defendant was present when Defendant Gambel engaged in the verbal tirade against the inmates in E1 dorm, told the inmates to take care of their own house, suggested violence was an appropriate remedy, and witnessed Defendant Gambel provide Ladorn Singer's name to an inmate after this.

63. Defendant was aware by the statements made by Defendant Gambel to the dorm of prisoners, and sharing Ladorn Singer's name with inmates and suggesting that people sometimes slip and fall, along with the other comments, that there was a substantial risk of serious harm that would result to Mr. Singer.



64. Defendant was aware of the likelihood of serious physical harm to any inmate who was identified by correctional officers as the snitch.

65. Despite Defendant's knowledge of that risk of serious harm, Defendant did nothing to stop Defendant Gambel from making angry, inflammatory statements to the dorm, insinuating violence was the appropriate response, and did nothing to stop Gambel from sharing Ladorn Singer's name with inmates in the dorm.

66. Even after the initial tirade by Gambel, Defendant took no steps to stop Gambel or report Gambel's actions to any superior officer despite ample time between the initial tirade by Gambel and the sharing of Ladorn Singer's name with the inmates.

67. Defendant's actions establish deliberate indifference to the 8th Amendment rights of Plaintiff.

68. By Defendant's actions, Plaintiff was deprived of the clearly established right to be free from deliberate indifference, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution.

69. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of



criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

**Count 3 – Violation of 42 U.S.C. § 1983<br>– 8th Amendment –<br>Deliberate Indifference (Failure to Intervene) by<br>Defendant Reed**

70. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

71. At the time of the events, Plaintiff was a prisoner at Reception and Medical Center Lake Butler ("RMC"), and in the custody of the Florida Department of Corrections.

72. While Plaintiff was a prisoner at RMC, Plaintiff was under the care of Defendant.

73. Defendant was acting under color of state or local law.

74. Defendant was present when Defendant Gambel engaged in the verbal tirade against the inmates in E1 dorm, told the inmates to take care of their own house, suggested violence was an appropriate remedy, and witnessed Defendant Gambel provide Ladorn Singer's name to an inmate after this.

75. Defendant was aware by the statements made by Defendant Gambel to the dorm of prisoners, and sharing Ladorn Singer's name

— **13** of **22** —

with inmates and suggesting that people sometimes slip and fall, along with the other comments, that there was a substantial risk of serious harm that would result to Mr. Singer.

76.   Defendant was aware of the likelihood of serious physical harm to any inmate who was identified by correctional officers as the snitch.

77.   Despite Defendant's knowledge of that risk of serious harm, Defendant did nothing to stop Defendant Gambel from making angry, inflammatory statements to the dorm, insinuating violence was the appropriate response, and did nothing to stop Gambel from sharing Ladorn Singer's name with inmates in the dorm.

78.   Even after the initial tirade by Gambel, Defendant took no steps to stop Gambel or report Gambel's actions to any superior officer despite ample time between the initial tirade by Gambel and the sharing of Ladorn Singer's name with the inmates.

79.   Defendant's actions establish deliberate indifference to the 8th Amendment rights of Plaintiff.

80.   By Defendant's actions, Plaintiff was deprived of the clearly established right to be free from deliberate indifference, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution.



81.   As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

## Count 4 – Violation of 42 U.S.C. § 1983 – 8th Amendment – Deliberate Indifference (Failure to Intervene) by Defendant Tucker

82.   Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

83.   At the time of the events, Plaintiff was a prisoner at Reception and Medical Center Lake Butler ("RMC"), and in the custody of the Florida Department of Corrections.

84.   While Plaintiff was a prisoner at RMC, Plaintiff was under the care of Defendant.

85.   Defendant was acting under color of state or local law.

86.   Defendant was present when Defendant Gambel engaged in the verbal tirade against the inmates in E1 dorm, told the inmates to take care of their own house, suggested violence was an



appropriate remedy, and witnessed Defendant Gambel provide Ladorn Singer's name to an inmate after this.

87.   Defendant was aware by the statements made by Defendant Gambel to the dorm of prisoners, and sharing Ladorn Singer's name with inmates and suggesting that people sometimes slip and fall, along with the other comments, that there was a substantial risk of serious harm that would result to Mr. Singer.

88.   Defendant was aware of the likelihood of serious physical harm to any inmate who was identified by correctional officers as the snitch.

89.   Despite Defendant's knowledge of that risk of serious harm, Defendant did nothing to stop Defendant Gambel from making angry, inflammatory statements to the dorm, insinuating violence was the appropriate response, and did nothing to stop Gambel from sharing Ladorn Singer's name with inmates in the dorm.

90.   Even after the initial tirade by Gambel, Defendant took no steps to stop Gambel or report Gambel's actions to any superior officer despite ample time between the initial tirade by Gambel and the sharing of Ladorn Singer's name with the inmates.

91.   Defendant's actions establish deliberate indifference to the 8th Amendment rights of Plaintiff.



92. By Defendant's actions, Plaintiff was deprived of the clearly established right to be free from deliberate indifference, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution.

93. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 5 – Violation of 42 U.S.C. § 1983 – 8th Amendment – Deliberate Indifference (Failure to Intervene) by Defendant Williams

94. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

95. At the time of the events, Plaintiff was a prisoner at Reception and Medical Center Lake Butler ("RMC"), and in the custody of the Florida Department of Corrections.

96. While Plaintiff was a prisoner at RMC, Plaintiff was under the care of Defendant.



97.   Defendant was acting under color of state or local law.

98.   Defendant was present when Defendant Gambel engaged in the verbal tirade against the inmates in E1 dorm, told the inmates to take care of their own house, suggested violence was an appropriate remedy, and witnessed Defendant Gambel provide Ladorn Singer's name to an inmate after this.

99.   Defendant was aware by the statements made by Defendant Gambel to the dorm of prisoners, and sharing Ladorn Singer's name with inmates and suggesting that people sometimes slip and fall, along with the other comments, that there was a substantial risk of serious harm that would result to Mr. Singer.

100. Defendant was aware of the likelihood of serious physical harm to any inmate who was identified by correctional officers as the snitch.

101.  Despite Defendant's knowledge of that risk of serious harm, Defendant did nothing to stop Defendant Gambel from making angry, inflammatory statements to the dorm, insinuating violence was the appropriate response, and did nothing to stop Gambel from sharing Ladorn Singer's name with inmates in the dorm.

102. Even after the initial tirade by Gambel, Defendant took no steps to stop Gambel or report Gambel's actions to any superior



officer despite ample time between the initial tirade by Gambel and the sharing of Ladorn Singer's name with the inmates.

103. Defendant's actions establish deliberate indifference to the 8th Amendment rights of Plaintiff.

104. By Defendant's actions, Plaintiff was deprived of the clearly established right to be free from deliberate indifference, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution.

105. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 6 – Violation of 42 U.S.C. § 1983 – 8th Amendment – Deliberate Indifference to Serious Medical Needs by Defendant Williams

106. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.



107. At the time of the events, Plaintiff was a prisoner at Reception and Medical Center Lake Butler ("RMC"), and in the custody of the Florida Department of Corrections.

108. While Plaintiff was a prisoner, Singer was under the care, custody, and supervision of Defendant.

109. Defendant was acting under color of state or local law.

110. Defendant had a constitutional duty to provide or obtain adequate medical care for inmates, including Singer.

111. Defendant had a constitutional duty not to be deliberately indifferent to the serious and obvious medical needs of inmates, including Singer.

112. While incarcerated and under the care of Defendant, Singer suffered a serious medical need when he was almost beaten to death and suffered serious head trauma.

113. Defendant was aware of the obvious and serious condition of Singer who was ill in front of him during security checks following the beating. Defendant knew Singer, was at a substantial risk of serious harm if he did not receive medical treatment for his head injuries. Despite knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to obtain for Singer the medical care and access to medical care known to be necessary under the circumstances.



114.  By Defendant's actions, Defendant violated Singer's clearly established right to be free from deliberate indifference, in violation of Singer's rights under 42 U.S.C. § 1983 and the 8th Amendment to the U.S. Constitution.

115.  As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

## 3. Relief

### 3.1.  Relief for Federal Claims

Plaintiff seeks this relief for each claim brought under 42 U.S.C. §§ 1983 and 1988:

A. Judgment for compensatory damages against Defendants;

B. Judgment for punitive damages against Defendants;

C. Judgment for attorney's fees under 42 U.S.C. § 1988, with the costs and expenses of this civil rights action;

D. Judgment for prejudgment interest on all economic losses and prejudgment interest on attorney's fees for delay in payment;



E.  Judgment for damages for physical injuries, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function;

F.  A trial by jury on all issues so triable;

G.  Such other and further relief as this Court may deem just, proper, and appropriate.


Submitted on June 18, 2019.

J. Alistair McKenzie, Esq.
Florida Bar Number:
**McKenzie Law Firm, P.A.**
905 East Hatton Street
Pensacola, FL 32503-3931
Telephone: (850) 432-2856
Facsimile: (850) 202-2012
amckenzie@mckenzielawfirm.com
tory@mckenzielawfirm.com
Attorneys for Plaintiff

